IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| HAUNAH VANLANINGHAM and DANIELLE SCHWARTZ, individually and on behalf of all similarly-situated current citizens of Illinois,<br><br>                Plaintiffs,<br><br>     v.<br><br>CAMPBELL SOUP CO.,<br><br>                Defendant. | No. 3:20-cv-00647-NJR |

**DEFENDANT CAMPBELL SOUP CO.'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULES OF
CIVIL PROCEDURE 12(b)(6) AND 12(b)(1)**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................................. 3

      A.    Plaintiffs Challenge Ingredients—Citric Acid, Ascorbic Acid, Succinic Acid, Sodium Phosphate and Xanthan Gum—that Perform Non-Preservative Functions in Food ................................................................... 3

      B.    The Complaint Fails to Allege Citric Acid, Ascorbic Acid, Succinic Acid, Sodium Phosphate and Xanthan Gum Function as Preservatives in the Soups ........................................................................................................... 5

      C.    The Complaint Fails to Allege Plaintiffs Were Injured by Claims Appearing Solely on Campbell's Website ................................................... 7

      D.    The Complaint Asserts Claims for Violation of ICFA, Breach of Express Warranty, and Unjust Enrichment ............................................................. 7

      E.    Procedural History ....................................................................................... 7

III.  ARGUMENT ....................................................................................................... 8

      A.    Plaintiffs' Claims are Conflict Preempted .................................................. 8

      B.    Plaintiffs' ICFA Claim Fails ..................................................................... 11

            1.    The Complaint does not plausibly allege that the No Preservative claims are misleading to a reasonable consumer .................................... 11

            2.    Plaintiffs fail to allege that the No Artificial Flavors language caused injury ........................................................................................... 18

      C.    Plaintiffs' Unjust Enrichment and Breach of Warranty Claims Necessarily Fail Along With the ICFA Claim ............................................ 19

      D.    Plaintiffs Lack Standing to Seek Injunctive Relief .................................. 20

IV.   CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Backus v. Nestlé USA, Inc.*,
  167 F. Supp. 3d 1068 (N.D. Cal. 2016) ................................................................9

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ............................................................................14

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ..............................................................................19

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) ..............................................................................12

*Brower v. Campbell Soup Co.*,
  243 F. Supp. 3d 1124 (S.D. Cal. 2017) .................................................................9

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ..............................................................................................8

*Burton v. Hodgson Mill, Inc.*,
  2017 WL 1282882 (S.D. Ill. Apr. 6, 2017) ........................................................20

*Cabrega v. Campbell Soup Co.*,
  No. 18-cv-3827 (E.D.N.Y. Nov. 18, 2019) .........................................................17

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) .........................................................................11, 18

*Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*,
  137 Ill. App. 3d 84 90–91 (1985) .......................................................................19

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) ..............................................................................11

*Disher v. Tamko Bldg. Prods, Inc.*,
  2015 WL 4609980 (S.D. Ill. July 31, 2015) .......................................................18

*Farina v. Nokia, Inc.*,
  625 F.3d 97 (3d Cir. 2010) ..................................................................................10

*Galanis v. Starbucks Corp.*,
  2016 WL 6037962 (N.D. Ill. Oct. 14, 2016) .......................................11, 12, 14, 16

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000) .................................................................................................8

*Hu v. Herr Foods, Inc.*,
    251 F. Supp. 3d 813 (E.D. Pa. 2017) ............................................................. passim

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ................................................................ passim

*In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
    275 F. Supp. 3d 910 (N.D. Ill. 2017) ..................................................11, 12, 16

*Killeen v. McDonald's Corp.*,
    317 F. Supp. 3d 1012 (N.D. Ill. 2018) .................................................11, 12, 16

*Lambert v. Dollar Gen. Corp.*,
    2017 WL 2619142 (N.D. Ill. June 16, 2017) .......................................................19

*Meaunrit v. ConAgra Foods Inc.*,
    2010 WL 2867393 (N.D. Cal. July 20, 2010) ..................................................9, 10

*Patriotic Veterans, Inc. v. Ind.*,
    736 F.3d 1041 (7th Cir. 2013) ....................................................................8, 10

*Phelps v. Hormel Foods Corp.*,
    244 F. Supp. 3d 1312 (S.D. Fla. 2017) ................................................................9

*Phillips v. DePaul Univ.*,
    19 N.E.3d 1019 (Ill. App. 2014) .......................................................................11

*Rooney v. Cumberland Packing Corp.*,
    2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ..............................................14, 16

*Scherr v. Marriott Int'l, Inc.*,
    703 F.3d 1069 (7th Cir. 2013) .........................................................................19

*Schwartz v. Campbell Soup Co.*,
    No. 3:18-cv-01655-NJR-GCS (S.D. Ill. Aug. 29, 2018) ......................................7

*Siegel v. Shell Oil Co.*,
    612 F.3d 932 (7th Cir. 2010) ...........................................................................18

*Spector v. Mondelēz Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016) ................................................................19

*Tarzian v. Kraft Heinz Foods Co.*,
   2019 WL 5064732 (N.D. Ill. Oct. 10, 2019)............................................................15

*Turek v. General Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ....................................................................................10

*Vanzant v. Hill's Pet Nutrition, Inc.*,
   934 F.3d 730 (7th Cir. 2019) ....................................................................................19

*Washington v. Hyatt Hotels Corp.*,
   2020 WL 3058118 (N.D. Ill. June 9, 2020)..............................................................12

**STATUTES**

815 ILCS 505/10a(a)....................................................................................................18

21 U.S.C. § 343(k) .........................................................................................................5

21 U.S.C. § 457.........................................................................................................9, 10

21 U.S.C. § 457(d) .........................................................................................................9

21 U.S.C. § 467e .............................................................................................................9

21 U.S.C § 678 ...............................................................................................................9

Federal Meat Inspection Act ..........................................................................................9

Illinois Consumer Fraud and Deceptive Business Practices Act .......................... passim

Poultry Products Inspection Act .....................................................................................9

**RULES**

Fed. R. Civ. P. 12 ..........................................................................................................12

**REGULATIONS**

21 C.F.R. § 101.22(j) ................................................................................................4, 15

21 C.F.R. § 161.190(a)(6)(vii).................................................................................4, 14

21 C.F.R. § 172.695 .......................................................................................................4

21 C.F.R. § 172.695(e)..................................................................................................14

21 C.F.R. § 182.1778 ...................................................................................................4

21 C.F.R. § 182.8013 .................................................................................................3, 4

21 C.F.R. § 182.8013(b) ..........................................................................................4, 14

21 C.F.R. § 184.1033 ...................................................................................................3

21 C.F.R. § 184.1033(c) ...............................................................................................4

21 C.F.R. § 184.1091 ...................................................................................................4

21 C.F.R. § 184.1091(c) ..........................................................................................4, 14

21 C.F.R. § 1778 ..........................................................................................................4

**OTHER AUTHORITIES**

FDA CPG Sec. 562.600 "Preservatives; Use in Nonstandardized Foods; Label
Declaration"(Reissued Feb. 1, 1989) .......................................................................5

# I.    INTRODUCTION

Plaintiffs Danielle Schwartz and Haunah Vanlaningham's Complaint asserts that certain Campbell Soup Company ("Campbell") soups are misleadingly labeled as having no preservatives, and that Campbell's website claims the same soups are made without artificial flavors. They contend these claims are false because they insist that the products contain ingredients—citric acid, ascorbic acid, succinic acid, sodium phosphate, xanthan gum, monosodium glutamate, disodium inosinate and/or disodium guanylate (the "Challenged Ingredients")—that necessarily and at all times act as preservatives or flavors whenever any food "contains" those ingredients. Complaint ¶¶ 26–33.

Regarding the ingredients that purportedly act as preservatives, Plaintiffs' assertion reflects a complete disregard of United States Food and Drug Administration ("FDA") regulations and guidance, which confirm that these ingredients perform many functions in food, including non-preservative functions. This authority confirms, in turn, that an ingredient's actual function in a product controls whether the ingredient is considered a preservative for labeling purposes.

FDA recognizes that certain ingredients (including citric acid, ascorbic acid, succinic acid, sodium phosphate, and xanthan gum) can have varying functions in different products, beyond functioning as preservatives. Yet, the Complaint does not plead any facts to establish that this is how these ingredients function in these products. Instead, the Complaint simply conclusorily defines the word "Preservative" to mean the ingredients themselves, without regard to their function in the soups. Complaint ¶ 7. These allegations fail to state a claim for multiple reasons.

First, Plaintiffs Complaint is barred by conflict preemption. Many of the same challenged ingredients—citric acid, sodium phosphate, xanthan gum—are also in soups containing beef or chicken that bear the same No Preservatives claim and have been inspected and approved by the United States Department of Agriculture ("USDA"), which has affirmatively concluded that the labels are non-misleading. Plaintiffs strategically omitted these USDA-approved soups from their Complaint and focus only on non-meat containing soups. But it frustrates federal policy objectives, and is thus barred by conflict preemption, for Plaintiffs to use state law to declare a "No

Preservatives" claim misleading based on the presence of ingredients that the USDA has deemed permissible on labels of soups bearing the exact same claim.

Second, Plaintiffs' conclusory assertions that the challenged ingredients function as preservatives are insufficient to meet the "reasonable consumer" standard that applies to the Complaint's Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim. No "reasonable consumer" thinks an ingredient should be labeled as a "preservative" even when it does not function as one. Likewise, Plaintiffs cannot plausibly allege that the soups at issue are misleadingly labeled as having no preservatives, when Plaintiffs have admittedly and purposely failed to make any inquiry, or allege any facts, that the acids function as preservatives in these specific products. The conclusory allegation that the acids function as preservatives is especially implausible here since the Soups are canned—a commonly known means for preserving food.

Third, the Complaint fails to plead causation—a required element under the ICFA— regarding references on a Campbell's website to the soups having "No artificial flavors." There is no allegation that the Plaintiffs even visited this website, much less that information there had anything to do with the Plaintiffs' alleged purchases.

The remaining claims in the Complaint, for unjust enrichment and breach of express warranty, are dependent on the same theory of deception as the ICFA claim. Under settled law, because the ICFA claim fails, these claims necessarily fails as well.

Finally, to the extent that the Complaint's summary request for "all such other and further relief," Complaint, Prayer for Relief ¶ f., can be construed to seek an injunction, that request should be dismissed because the Complaint does not allege any threatened future injury to the Plaintiffs.

## II.  FACTUAL BACKGROUND

### A.  Plaintiffs Challenge Ingredients—Citric Acid, Ascorbic Acid, Succinic Acid, Sodium Phosphate and Xanthan Gum—that Perform Non-Preservative Functions in Food.

Defendant Campbell manufactures, distributes and labels the soups at issue in this lawsuit ("Campbell Soups" or "Soups"). Complaint ¶¶ 1–2. The Soups' labels, in accordance with the FDA's comprehensive regulatory scheme, list their ingredients and nutritional content—including

the ingredients Plaintiffs claim they wanted to avoid (citric acid, ascorbic acid, succinic acid, sodium phosphate, monosodium glutamate, disodium guanylate, disodium inosinate, and xanthan gum). *See* Campbell's Request for Judicial Notice ("RJN") Exs. A–C; *see also* Complaint ¶¶ 14–15. Plaintiffs do not allege that the Soup's list of ingredients was incomplete or erroneous, so any consumer who reads the ingredients lists can see they contain the Challenged Ingredients.

Because the Soups do not contain any ingredients that function as preservatives, they bear claims stating "No Preservatives Added" or "Made With Patience, Not Preservatives." *See* Complaint ¶¶ 3-5 (hereinafter "No Preservatives Claims"); RJN Exs. A, C. The second of these statements—that the Soups are "Made With Patience, Not Preservatives"—is a duly registered trademark that Campbell has used for over seven years. *See* RJN Ex. D (United States Patent & Trademark Office record for Registration No. 4,092,091) ("Made With Patience, Not Preservatives" first date in use August 31, 2011).

Plaintiffs nonetheless challenge these labeling claims as false because the Soups contain citric acid, ascorbic acid, succinic acid, sodium phosphate, and/or xanthan gum (hereinafter "Challenged Preservative Ingredients"). Complaint ¶¶ 7, 12. But, as explained below, FDA guidance and the Complaint itself both discredit the notion that these ingredients are necessarily preservatives in the Soups at issue here.[1]

Each of the five ingredients Plaintiffs object to as preservatives are recognized in FDA regulations and related guidance as performing non-preservative functions. Citric acid, ascorbic acid, succinic acid, and sodium phosphate are regulatorily classified by the FDA as "Generally Recognized as Safe" ("GRAS") for use in food. *See* 21 C.F.R. § 184.1033 (citric acid); 21 C.F.R.

---

[1] The named Plaintiffs purchased two varieties of Campbell's Soups: Home Style Harvest Tomato With Basil and Slow Kettle Tomato & Sweet Basil Bisque. Complaint ¶¶ 14–15. The Home Style Harvest Tomato With Basil contains citric acid, ascorbic acid, and monosodium glutamate, as their labels indicate. *See* RJN Ex. A. The Slow Kettle Tomato & Sweet Basil Bisque contains citric acid. *Id.* Ex. B. The Complaint identifies several other soups, which Plaintiffs did not purchase. Complaint ¶¶ 39, 51. As argued below, defects in the Complaint require dismissal of the case in full. Campbell nonetheless reserves all rights, if the case proceeds, to later challenge Plaintiffs' standing to assert claims related to soups that they did not purchase.

§ 182.8013 (ascorbic acid); 21 C.F.R. § 184.1091 (succinic acid); 21 C.F.R. § 182.1778 (sodium phosphate). Xanthan gum is likewise a permitted food additive. 21 C.F.R. § 172.695. These regulations acknowledge that each ingredient can perform non-preservative functions. FDA regulations for citric acid, ascorbic acid and sodium phosphate confirm that there are no restrictions on "conditions of use" for these ingredients. 21 C.F.R. § 184.1033(c) (citric acid); 21 C.F.R. § 182.8013(b) (ascorbic acid); 21 C.F.R. § 1778 (sodium phosphate). Other FDA regulations acknowledge citric acid's potential for use as a flavor or seasoning agent. *See* 21 C.F.R. § 161.190(a)(6)(vii) (standard of identity for canned tuna stating that the food may be "seasoned or flavored with . . . lemon flavoring to be prepared from lemon oil and citric acid"). Ascorbic acid is likewise classified as acceptable for use as a "nutrient." 21 C.F.R. § 182.8013. And succinic acid is specifically recognized in FDA regulations as functioning as a "flavor enhancer" or "pH control agent"—the regulation says nothing about its use as a preservative. *See* 21 C.F.R. § 184.1091(c) ("The ingredient is used as a flavor enhancer as defined in 170.3(o)(11) of this chapter and pH control agent as defined in 170.3(o)(23) of this chapter."). Here, the Soups use citric and succinic acid for taste and ascorbic acid to provide Vitamin C. Finally, FDA regulations explain that xanthan gum is used in foods as a stabilizer, emulsifier or thickener, 21 C.F.R. § 172.695, which is precisely how Campbell uses it in the Soups. Complaint ¶ 33.

FDA regulations correspondingly establish certain requirements for ingredients when they are actually used as preservatives. *See* 21 C.F.R. § 101.22(j). Section 101.22(j) requires manufacturers to label such ingredients according to their particular preservative function: "A food to which a chemical preservative(s) is added shall . . . bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative,' 'to retard spoilage,' 'a mold inhibitor,' 'to help protect flavor' or 'to promote color retention.'" *See* 21 C.F.R. § 101.22(j) (emphasis added). Section 101.22(j) thus makes clear that whether an ingredient is a "preservative" depends on how it functions in the product.

The FDA's Compliance Policy Guide ("CPG") for the labeling of preservatives is in accord with FDA regulations: The CPG emphasizes it is the "function" of the particular preservative that

triggers the labeling obligation. *See* RJN Ex. E (FDA CPG Sec. 562.600 "Preservatives; Use in Nonstandardized Foods; Label Declaration") (Reissued Feb. 1, 1989) (hereinafter "Preservatives CPG") (noting preservatives "should be food grade, perform its intended function, and be used in accord with good manufacturing practices"). Because the *function* of a preservative is what is central to accurate product labeling, the Preservatives CPG advises that if an ingredient is used as a preservative, its specific function may be emphasized on the label in order to best inform consumers of that preservative's presence:

> In recent years, we have held that the statutory words "chemical preservative" are not necessary in order to satisfy [21 U.S.C. § 343(k)], so long as the declaration on the label does reflect the fact that a chemical preservative is present. Thus, when the precise preservative function of the chemical is known, the statutory phrase can be replaced by words which describe this function. It is believed that in many situations this designation of the precise chemical function, coupled with the common or usual name of the chemical, results in a statement more informative to the consumer.

*Id.* The Preservatives CPG then goes on to identify as examples of proper labeling, those that identify "precise preservative function, for example, '_____to retard (inhibit) mold growth,' or '_____ to  retard spoilage' or '_____ to promote color retention,' the blank being filed in with the common or usual name of the preservative ingredient." *Id.* It would thus be misleading under this Guidance to suggest an ingredient is a preservative for labeling purposes if that ingredient does not, in fact, perform that "precise preservative function" in the food. *Id.*

B.    **The Complaint Fails to Allege Citric Acid, Ascorbic Acid, Succinic Acid, Sodium Phosphate and Xanthan Gum Function as Preservatives in the Soups.**

Plaintiffs Schwartz and Vanlaningham (both Illinois residents) each allege that they purchased a single variety of the Soups and when doing so relied on the "Made With Patience, Not Preservatives" or "No Preservatives Added" language on the labels. Complaint ¶¶ 14–15. The Complaint alleges that each Plaintiff inspected the labels of the Soups sufficiently to review these claims. *Id.* The labels of the Soups also bear a list of ingredients that identifies the presence of the acid ingredients they object to. *See* RJN Exs. A–B. Plaintiffs claim to have suffered economic harm from these purchases because neither wanted to buy soup that "contained preservatives." *Id.*

Even though the Challenged Preservative Ingredients all perform non-preservative functions and the Soups are canned, the Complaint does not contain a single plausible allegation of fact that these acids, in fact, function as a preservative in these Soups. There is no reference to any testing or other pre-filing investigation that Plaintiffs or their counsel undertook to determine how these acids function in the Soups. The Complaint merely alleges that the Challenged Preservative Ingredients are capable of functioning as preservatives, Complaint ¶¶ 26–28, 30, 33, but does not allege that they actually function this way in the Soups. *Id.* Instead, the Complaint summarily alleges that the Soups "contain" the respective ingredient. Complaint ¶¶ 39, 51. Indeed, the Complaint's definition of the term "Preservative" is merely an identification of the ingredients themselves. Complaint ¶ 7 (defining the term "Preservatives" to mean the citric acid, ascorbic acid, succinic acid, sodium phosphate, and xanthan gum themselves, without reference to whether they function as preservatives in the food) ("The Soups, however, contain preservatives because they contain the ingredients citric acid, ascorbic acid, succinic acid, sodium phosphate, and/or xanthan gum, all of which are preservatives (the 'Preservatives').").

Moreover, many of these same challenged ingredients are also contained in soups that bear the same No Preservatives language on labels that the USDA has concluded are non-misleading. As part of a comprehensive federal regulatory scheme, the USDA reviews and provides premarket approval for the labels of foods containing meat or poultry. *See* RJN Ex. F. Many Campbell's Slow Kettle and Homestyle soups that contain meat or chicken and also bear a No Preservatives claim have been so approved. *Id.* Exs. F & C (standard lids for Slow Kettle Soups). And these soups contain some of the very same ingredients that Plaintiffs otherwise conclusorily allege are preservatives—for example, citric acid and xanthan gum. *Id.* So, the Complaint posits that a soup with citric acid cannot be truthfully labeled as having "No Preservatives," even though the USDA has come to the opposite conclusion, with the only difference between the two soups being that one contains chicken and one does not. *Compare* RJN Exs. F & C, *with* Compl. ¶¶ 14–17.

**C.    The Complaint Fails to Allege Plaintiffs Were Injured by Claims Appearing Solely on Campbell's Website.**

In addition to the No Preservatives claims, Plaintiffs allege that two claims on Campbell's website—"No artificial flavors and no added preservatives or colors," and "No artificial flavors—Campbell's Slow Kettle Style soups contain no preservatives, no artificial colors, no artificial flavors and no MSG"—are false or misleading because the Soups contain monosodium glutamate, disodium inosinate, disodium guanylate, citric acid, and/or succinic acid, which Plaintiffs allege are "commercially manufactured artificial flavors." Complaint ¶¶ 4, 6, 8. But, the Complaint entirely fails to allege that Plaintiffs saw the No Artificial Flavors statements before purchasing the Soups or that the No Artificial Flavors statements otherwise caused Plaintiffs to take any action to their detriment. *See* Complaint ¶¶ 14–15.

**D.    The Complaint Asserts Claims for Violation of ICFA, Breach of Express Warranty, and Unjust Enrichment.**

Based on these allegations, the Plaintiffs assert a cause of action under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and claims for breach of express warranty and unjust enrichment. Complaint ¶¶ 67–95. The Complaint seeks certification of an Illinois damages class. *Id.* ¶ 58; *see also* Prayer for Relief ¶ c. The Complaint does not expressly seek injunctive relief as a remedy, pleading only "all such other and further relief, as may be just and proper," as boilerplate in its Prayer for Relief. *Id.* ¶ f.

**E.    Procedural History.**

This is not Plaintiffs' first complaint against Campbell based on the No Preservatives claims. These same Plaintiffs sued Campbell in the summer of 2018 raising nearly identical claims regarding Campbell's Home Style and Slow Kettle soups. As here, Plaintiffs alleged that the claims "Made With Patience, Not Preservatives" and "No Preservatives Added" on the soups' labels were false or misleading because the soups contained citric acid, ascorbic acid, and/or succinic acid. *See* Removal Exhibit A (State Court Complaint) ¶¶ 4–7, *Schwartz v. Campbell Soup Co.*, No. 3:18-cv-01655-NJR-GCS (S.D. Ill. Aug. 29, 2018) (ECF No. 1). Also as here, Plaintiffs initially filed in Illinois state court, but Campbell successfully removed to this Court based on

diversity jurisdiction. The case was assigned to Chief Judge Nancy Rosenstengel. Campbell filed a motion to dismiss. No. 3:18-cv-01655-NJR-GCS (S.D. Ill. Jan. 30, 2019) (ECF No. 32). Plaintiffs filed an amended complaint in lieu of an opposition, ECF No. 35, and shortly thereafter voluntarily dismissed the case, ECF No. 36.

## III.   ARGUMENT

Plaintiffs' case should be dismissed in full because their claims are conflicted preempted, the No Preservatives claims are not misleading to a reasonable consumer, and Plaintiffs fail to allege that the No Artificial Flavors claims caused them any harm. Separately, to the extent Plaintiffs seek injunctive relief, that request fails for lack of Article III standing.

### A.   Plaintiffs' Claims are Conflict Preempted.

Plaintiffs limit their claims to soups that do not contain meat, and for good reason: meat-containing products are subject to inspection and approval by the United States Department of Agriculture. As part of that regulatory oversight, USDA reviews product labels to ensure they are not false or misleading. Any private lawsuit based on a USDA-approved label is preempted. Here, the No Preservatives Claims on the Soups labels are identical to claims USDA has approved on Campbell's soups that contain meat. Therefore, Plaintiffs' claim that the Soups labels are misleading directly conflicts with USDA's finding that identical labels on meat-containing soups *are not* misleading, and their case is conflict preempted.

Conflict preemption applies where an obligation sought under state law "stand[s] 'as an obstacle to the accomplishment and execution of the full purposes and objectives of" federal law. *Patriotic Veterans, Inc. v. Ind.*, 736 F.3d 1041, 1049 (7th Cir. 2013). To determine whether a state law constitutes such an "obstacle," courts consider regulations in their historical context and the agency's explanation of its goals. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 875 (2000). Conflict preemption occurs where state law is used in a manner that upsets the "delicate balance of statutory objectives" an agency is charged with making. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). As with express preemption, when conflict preemption applies,

a complaint must be dismissed for failure to state a claim. *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1072–74 (N.D. Cal. 2016).

The federal laws at issue here are the Federal Meat Inspection Act ("FMIA") and the Poultry Products Inspection Act ("PPIA"). "Congress enacted the FMIA and the PPIA in part to prevent the interstate transfer of adulterated and misbranded meat and poultry products." *Meaunrit v. ConAgra Foods Inc.*, 2010 WL 2867393, at *5 (N.D. Cal. July 20, 2010). So, the statutes require USDA to determine pre-distribution whether the labels of meat or poultry-containing products are "false or misleading." *See* 21 U.S.C. § 457(d). USDA does this with a pre-approval process through which companies submit labels for review, and USDA confirms that the labels comply with the acts. *See* 21 U.S.C. § 457. Both statutes also include broad preemption previsions that preempt any State requirement for labeling "in addition to, or different than" those imposed by the USDA. *See* 21 U.S.C. §§ 467e, 678.

Applying these preemption provisions, courts consistently hold that "the FMIA and PPIA preempt state-law causes of action[] that seek to impose different requirements on labeling." *Meaunrit*, 2010 WL 2867393, at *6; *id.* at *7 ("Because the pre-approval process includes a determination of whether the labeling is false and misleading, and the gravamen of Plaintiff's attack on the label concerns whether those instructions are accurate, the plaintiff's state causes of action are preempted by federal law."); *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1316–17 (S.D. Fla. 2017) ("Plaintiff's claims are expressly preempted by PPIA and FMIA. FSIS has preapproved all of the labels at issue, each of which contains the challenged '100% Natural' and 'No Preservatives' claims. By attempting to challenge the FSIS-approved claims as false, misleading, or deceptive, each of Plaintiff's claims improperly seeks to impose additional or different requirements on Defendant's labeling than those required by USDA."); *accord Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124, 1129 (S.D. Cal. 2017).

Here, Campbell sought and obtained pre-approval from USDA for numerous Slow Kettle and Home Style soups containing meat and poultry. These soups contain the same "No Preservatives" claims challenged here as well as ingredients that Plaintiffs summarily allege are

preservatives—*e.g.*, citric acid, sodium phosphate and xanthan gum. RJN Exs. F & C; *see also* Complaint ¶¶ 16–17 (alleging that labels of soups in this line are substantially similar). As to each of these soups, USDA's premarket review means that it made a legal conclusion that the labels of these soups, including the No Preservatives claim, are not misleading. *See* 21 U.S.C. § 457; *see also* RJN Ex. F (soups bearing USDA approval). Thus, USDA has already determined that Campbell's Home Style soups are properly labeled has having "No Preservatives" despite the presence of the Challenged Preservative Ingredients. Plaintiffs nevertheless seek to hold Campbell's liable for including the exact same claim on products from the same line that contain the exact same allegedly preservative ingredients. *See* Complaint ¶ 51. The only difference is the USDA-approved products contain meat, while the Soups at issue here do not. Complaint ¶¶ 1–2.

This is precisely the type of inconsistent application of law conflict preemption is designed to avoid. *Patriotic Veterans*, 736 F.3d at 1049 (conflict preemption occurs when state law claim would thwart federal scheme's objectives). Using its expertise in food labeling and distribution, USDA determined that the No Preservative claims on Campbell's meat and poultry-containing soups were not misleading, even though the soups contain ingredients Plaintiffs claim are preservatives. Yet by a fluke of federal agency jurisdiction, Plaintiffs believe they are entitled to punish Campbells for making the same claim on similar soups. This frustrates Congress's purpose of promoting consistency and transparency in food labeling. *Meaunrit*, 2010 WL 2867393, at *6; *Turek v. General Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011). It would also run contrary to USDA's expertise in food labeling. *See Farina v. Nokia, Inc.*, 625 F.3d 97, 126 (3d Cir. 2010) (conflict preemption applies with particular force when issue is one that requires agency expertise). Conflict preemption therefore applies and bars Plaintiffs' claims based on Campbell's labeling.

## B.    Plaintiffs' ICFA Claim Fails.

Plaintiffs' ICFA claims have other independent flaws as well: First, the Complaint fails to plausibly allege that the No Preservative label claim is misleading to a reasonable consumer. Second, Plaintiffs fail to plead causation as to statements on Campbell's website.

1. **The Complaint does not plausibly allege that the No Preservative claims are misleading to a reasonable consumer.**

To establish a claim under ICFA, a Plaintiff must allege "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted). The "deceptive act or practice" prong of Plaintiff's ICFA claim is evaluated under the "reasonable consumer" standard: "[T]o state a claim [under the ICFA], a plaintiff must allege conduct that plausibly could deceive a reasonable consumer." *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 920–21 (N.D. Ill. 2017) (citing *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. 2014)). Under this standard, the "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

An ICFA claim that challenges a particular labeling statement as misleading does not survive review under the "reasonable consumer" standard if the plaintiff's proffered definition for that statement is illogical or implausible. *See Ibarrola v. Kind*, LLC, 83 F. Supp. 3d 751, 756–57 (N.D. Ill. 2015) (rejecting plaintiff's interpretation of term "no refined sugars" as "not plausible" and dismissing complaint under "reasonable consumer" standard); *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (dismissing ICFA claim under "reasonable consumer" standard where plaintiff's interpretation of meaning of "iced drink" on defendant's menus was "unreasonable" and contradicted by "common sense"); *see also Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018) (use of term "value" on fast food restaurant not misleading to a reasonable consumer where "plaintiff may not have wished to take the time to compare prices, but there is no question that doing so would have dispelled the deception on which her claims are based").

Similarly, the "reasonable consumer" standard is not met where review of "an ingredient label or other disclaimer would dispel any confusion" over a potentially misleading labeling claim. *See In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d at 922;

*see also Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118, at *4–5 (N.D. Ill. June 9, 2020) (dismissing ICFA complaint where consumer was presented with clarifying information before purchase); *Killeen*, 317 F. Supp. 3d at 1013 (where plaintiff alleges labeling has "a tendency to mislead consumers . . . Illinois law is clear that where other information is available to dispel that tendency, there is no possibility for deception").

Where the plaintiff fails to allege facts sufficient to meet the "reasonable consumer" standard, courts can and do dismiss the action outright. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (court may dismiss ICFA claim as a matter of law); *Washington*, 2020 WL 3058118, at *4–5 (dismissing complaint at Rule 12 stage for failure to allege facts sufficient to state a claim under "reasonable consumer standard); *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d at 922 (same); *Killeen*, 317 F. Supp. 3d at 1013–14 (same); *Ibarrola*, 83 F. Supp. 3d at 757–58 (same); *Galanis*, 2016 WL 6037962, at *3 (same).

Plaintiffs' Complaint fails to meet the reasonable consumer standard in at least two ways. First, it does not plead facts to support the (implausible) assertion that a "reasonable consumer" considers any ingredient a preservative if it might potentially be used for that function, even if the ingredient does not actually function as a preservative in the food under consideration. Second, as to the specific Campbell Soups at issue, the Complaint does not plausibly allege that citric acid, ascorbic acid, succinic acid, sodium phosphate, and/or xanthan gum actually function as preservatives in these products. To the contrary, the Complaint simply asserts that these ingredients are preservatives, while simultaneously alleging that Campbell's uses them for other purposes, such as flavoring (citric and succinic acid and sodium phosphate), to add Vitamin C (ascorbic acid), or as a thickening agent (xanthan gum). Complaint ¶¶ 26–33. The recent decision in *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017), is instructive as to why each of these defects compels dismissal of Plaintiffs' ICFA claim.

In *Hu*, plaintiff asserted claims for violation of New York's consumer protection laws by alleging the label statement "No Preservatives Added" was false because the products contained

citic acid. 251 F. Supp. 3d at 816–17.[2] The complaint contained a series of generalized assertions about citric acid's potential use as a preservative. *Id.* at 816. But the Complaint did not plead any facts to show that citric acid functioned as a preservative in the defendant's products—versus some other function, such as for taste. *Id.* at 821–22.

The court dismissed the consumer protection claims, explaining that a reasonable consumer does not define the word "preservatives" so broadly that it reaches any ingredient that could act as a preservative, even if it does not perform that function:

> [T]he Court agrees with Defendant that Plaintiff has not adequately pleaded that a reasonable consumer would define an ingredient as a preservative regardless of its functionality—*i.e.*, even if the ingredient does not actually preserve that particular product. While plaintiff's well-pleaded allegations are accepted as true at this stage, the Court is not required to credit legal conclusions as factual allegations. Plaintiff's allegation regarding a reasonable consumer's definition of a preservative is a legal conclusion, and Plaintiff has not provided any other allegations supporting her theory of the definition of a preservative.

*Id.* at 821 (emphasis added).

Next, as an additional basis for dismissal, the court in *Hu* held that plaintiff's reliance on third-party sources indicating that citric acid can be used as a preservative was insufficient to establish that citric acid was used as a preservative in the defendant's products. *Id.* at 822–23 ("Plaintiff does not directly allege that citric acid functions as a preservative in any of the Products. Instead, Plaintiff asks the Court to draw a chain of inferences that, according to Plaintiff, warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its Products . . . . As Plaintiff's arguments and speculations are not supported by well-pleaded factual allegations in the Amended Complaint, the Court need not accept them as true."). The reasoning in *Hu* fully applies here and mandates dismissal of Plaintiffs' ICFA claim as to the No Preservatives claims.

*First*, as in *Hu*, no reasonable consumer would interpret the term "preservatives" on Campbell Soups' labels to encompass ingredients that do not actually function to preserve the

---

[2] The New York consumer protection claims asserted in *Hu*, like the ICFA claim here, are evaluated under the "reasonable consumer" standard. *Hu*, 251 F. Supp. 3d at 819.

product. *Hu*, 251 F. Supp. 3d at 821. On this point, *Hu* is in step with courts in Illinois and elsewhere that have dismissed complaints where the plaintiff proffers an overbroad or idiosyncratic definition of a term that is not shared by a "reasonable consumer." *See Ibarrola*, 83 F. Supp. 3d at 757–58 (rejecting implausible definition of "no sugar added"); *Galanis*, 2016 WL 6037962, at *3 (rejecting implausible definition of "iced tea"); *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (dismissing complaint on reasonable consumer grounds where plaintiff's definition of "in the raw" on label of sugar unreasonably included any product that is "raw, unprocessed, and unrefined"); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019) (no reasonable consumer believes that "diet" on soda drink means weight loss).

Most pointedly, the Complaint does not plausibly allege facts to support the notion that citric acid, ascorbic acid, succinic acid, sodium phosphate, and xanthan gum can function *only* as preservatives, particularly given contrary authority. The FDA recognizes that ascorbic, citric and succinic acid can all perform multiple, different, functions. Citric acid can be used to function for seasoning or flavor, *see* 21 C.F.R. § 161.190(a)(6)(vii), which is how the ingredient is used in the Soups, as the Complaint readily acknowledges. *See* Complaint ¶ 26. Similarly, ascorbic acid typically functions as the nutrient Vitamin C in foods, *see* 21 C.F.R. § 182.8013(b), which is its function in the challenged Soups as the products' labels plainly state. *See* RJN Ex. A (identifying ascorbic acid in the Soups as "Vitamin C"). Indeed, the Complaint itself acknowledges that Campbell's adds ascorbic acid to the Soups to supplement the Vitamin C lost during the cooking process. *See* Complaint ¶ 27. Succinic acid is specifically identified in FDA regulations as an ingredient that functions to flavor food. *See* 21 C.F.R. § 184.1091(c). Finally, the Complaint pleads that xanthan gum and sodium phosphate are added to foods to impact texture, Complaint ¶¶ 30, 33, which is consistent with FDA regulations, 21 C.F.R. § 172.695(e) (xanthan gum is thickening agent). The Complaint does not even claim that these ingredients function as preservatives.

And whether a particular ingredient is classified as a preservative, versus classification for some other use such as for taste or providing nutrients, depends on how that ingredient functions

in the food. So, the FDA regulation governing labeling of preservatives is triggered only when an ingredient has an actual preservative function in the food. *See* 21 C.F.R. § 101.22(j) (foods with preservatives are labeled with the "common or usual name of the [preservative] ingredient(s) and a separate description of its function, e.g., 'preservative,' 'to retard spoilage,' 'a mold inhibitor,' 'to help protect flavor' or 'to promote color.'") (emphasis added). The FDA's Preservatives CPG is in accord, stating that when an ingredient is used as a preservative, the "precise chemical function" of that is "more informative to consumers" than merely identifying a preservative's presence. RJN Ex. E.

Plaintiff's Complaint, by contrast, purports to trigger preservative labeling obligations even if the ingredient at issue performs no preservative function whatsoever. By advancing a definition for preservative that is at odds with FDA guidance further illustrates that the Complaint does not meet the reasonable consumer standard. *Ibarrola*, 83 F. Supp. 3d at 757–58 ("reasonable consumer" not misled by claim "no refined sugar," where plaintiff's definition implausible in light of contrary USDA Guidance and FDA regulations for sugar); *see also Hu*, 251 F. Supp. 3d at 821 (a "reasonable consumer" would not define an ingredient as a preservative "if the ingredient does not actually preserve that particular product"); *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732 (N.D. Ill. Oct. 10, 2019) (when a contested ingredient can be constituted multiple ways the plaintiff must allege sufficient facts to show that the ingredient functions as plaintiff claims).

Moreover, the FDA's emphasis on an ingredient's function as the relevant inquiry for whether there is a corresponding labeling obligation for preservatives allows consumers to make informed decisions. If a consumer wants to avoid products with ingredients used to prevent spoilage, FDA regulations mandate labeling that calls for that—by imposing a labeling requirement for preservatives that identify when an ingredient is acting as a preservative and stating that ingredient's specific preservative function. 21 C.F.R. § 101.22(j). Citric acid, ascorbic acid, succinic acid, sodium phosphate, and xanthan gum are not used for preservative function in the Soups; the products are preserved via the canning process itself. And the Soups undisputedly disclose the presence of the challenged ingredients right where they should be disclosed—in the

ingredient list. *See* RJN Exs. A–B. The Complaint does not allege that the labels' ingredient lists were incorrect or incomplete.

If, instead, Plaintiffs just wanted to avoid buying products with citric acid, ascorbic acid, succinic acid, sodium phosphate, or xanthan gum—even if those ingredients are not functioning as a preservative in the Soups—then their claim still fails to satisfy the "reasonable consumer" standard. That's because any ambiguity or confusion over whether the No Preservatives claim led them to believe that the objected-to ingredients would not be in the Soups is easily remedied by simply looking at the Soups' ingredient lists and seeing those ingredients' presence. As the court in *In re: 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation* explained, there is no actionable deception under the "reasonable consumer" standard in those circumstances: "Reasonable consumers would thus need more information before concluding that the labels promised only cheese and nothing more, and they would know exactly where to look to investigate—the ingredient list. Doing so would inform them that the product contained [the objected to] non-cheese ingredients." 275 F. Supp. 3d at 923; *accord Killeen*, 317 F. Supp. 3d at 1013. Here, likewise, since the labels accurately disclosed the presence of the Challenged Ingredients, Plaintiffs cannot plausibly allege to have been deceived into purchasing products containing those ingredients. Thus, Plaintiffs' insistence that a "preservative" is anything that could function that way—even if the ingredient does not actually serve that function—is the kind of implausible and strained definition courts have rejected in food labeling cases like *Hu*, *Rooney*, *Ibarrola*, and *Galanis* as failing to meet the "reasonable consumer" standard.

*Second*, the Complaint does not "directly allege that [the acids, sodium phosphate, or xanthan gum] function as a preservative in any of the [Campbell] products." *Hu*, 251 F. Supp. 3d at 822. There is no allegation in the Complaint that Plaintiffs did anything to determine whether, as used in the Soups, the challenged ingredients function as preservatives. Instead, in an implausible display of circular reasoning, the Complaint just defines the term "Preservatives" to mean the challenged ingredients themselves, and then alleges that the Soups necessarily have preservatives because they "contain" those ingredients. Complaint ¶¶ 26–28, 33. This kind of

syllogistic reasoning is effectively an admission that Plaintiffs have not "directly alleged" that the acids actually function as preservatives. *Hu*, 251 F. Supp. 3d at 822.

Likewise, the blanket assertion that the citric acid, ascorbic, sodium phosphate, succinic acid, and xanthan gum in these specific Soups must necessarily preserve them—without any accompanying allegation of fact to substantiate that assertion—is controverted by the fact that the Soups are canned, a well-known method of preservation. *See* RJN Ex. G; *See* Merriam-Webster Dictionary ("canned (adjective). 1. preserved in a sealed can or jar."), at https://www.merriam-webster.com/dictionary/canned; MacMillan Dictionary ("canned (adjective), at https://www.macmillandictionary.com/dictionary/american/canned. canned food has been preserved in a metal container without air"). So, Plaintiffs' refusal to provide any specific allegation that a canned soup is preserved through some means other than the canning, further illustrates the Complaint's implausibility and its failure to meet the "reasonable consumer" standard. *See Ibarrola,* 83 F. Supp. 3d at 758 ("Even though a reasonable consumer may not understand everything that happens to sugar cane before its derivative can be added as an ingredient in Vanilla Blueberry Clusters, a reasonable consumer would know that all sugar cane-derived sweeteners suitable for human consumption must be at least partially refined."). Plaintiff's ICFA claim based on the No Preservatives label statements should be dismissed.[3]

### 2.   Plaintiffs fail to allege that the No Artificial Flavors language caused injury.

The Complaint suggests that No Artificial Flavors language on Campbell's website is false or misleading because the Soups contain citric acid, ascorbic acid, succinic acid, monosodium glutamate, sodium phosphate, disodium guanylate, or disodium inosinate, which purportedly

---

[3] Plaintiffs may cite in their opposition a recent order from the Eastern District of New York in a case also involving allegations that a "No Preservatives" claim on Campbell's soup labels was false or misleading because the soups contained citric and/or ascorbic acid. *See Cabrega v. Campbell Soup Co.*, No. 18-cv-3827 (E.D.N.Y. Nov. 18, 2019) (Order on Motion to Dismiss). *Cabrega* is unpersuasive here for three reasons: First, Campbell's motion to dismiss did not raise a conflict preemption argument, which disposes of Plaintiffs' case. Second, the order is unpublished and not available in Westlaw, indicating its limited persuasive value. Third, Plaintiffs submitted an expert declaration in *Cabrega* that the court—incorrectly in Campbell's view—credited for purposes of assessing the complaint's plausibility; there's no such declaration here.

function as flavors. Complaint ¶¶ 4, 6. But Plaintiffs fail to allege that they saw these statements before purchasing the Soups, or that these statements otherwise caused them any harm. *See* Complaint ¶¶ 14–15 (alleging reliance on label claims, not website). To the extent Plaintiffs base their ICFA claim on these non-label statements, that claim should be dismissed.[4]

To prevail under ICFA, a plaintiff must demonstrate that a defendant's conduct was the proximate cause of her injury. 815 ILCS 505/10a(a). So, an ICFA claim is viable only if plaintiff pleads that she saw the allegedly false or misleading statement before she purchased the product, and that statement caused her to take some action to her detriment. In *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), for example, the Seventh Circuit affirmed dismissal of an ICFA case where plaintiff alleged that the misleading product price was communicated to him on his receipt, which he saw *after* he purchased the products. *Id.* at 737–38. The Court held that "the representation must have been made to him *before* the purchase of the merchandise." *Id.* at 738; *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("absent proof that *but for* the defendants' conduct, he would not have purchased the defendants' gasoline, he is not entitled to relief under ICFA"). And as to websites specifically, a plaintiff cannot satisfy the causation element by pointing to content that the plaintiff never saw or read. *See, e.g., Disher v. Tamko Bldg. Prods, Inc.*, 2015 WL 4609980, at *5 (S.D. Ill. July 31, 2015) (dismissing ICFA claims premised on defendants' "website and in brochures and advertisements" that plaintiff did not allege having read or seen).

The same reasoning applies here to the No Artificial Flavors language on Campbell's website. Plaintiffs entirely fail to allege they even *saw* this language before purchasing the Soups or that it otherwise caused them to take some action to their detriment. Having never viewed this language, there is no causation to support an ICFA claim. *Disher*, 2015 WL 4609980, at *5

---

[4] It is not entirely clear from the Complaint that Plaintiffs base their ICFA claim on the website statements. Although the Complaint references these statements, Plaintiffs ICFA claim discusses only the No Preservatives claims. *See* Complaint ¶¶ 69–70.

("[plaintiff] fails to satisfy the proximate causation element as to those particular representations" on a website plaintiff never "actually read or viewed").

## C.      Plaintiffs' Unjust Enrichment and Breach of Warranty Claims Necessarily Fail Along With the ICFA Claim.

Plaintiffs' unjust enrichment claims fail along with their ICFA claims. "Under Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Instead, Illinois courts describe it as "a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence . . ." *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 137 Ill. App. 3d 84 90–91 (1985). The request for relief based on unjust enrichment is therefore "tied to the fate of the claim under the [ICFA]." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019). Because Plaintiffs have failed to state a claim under the ICFA, they also failed to state a claim for unjust enrichment.

The same is true for their breach of warranty claims. Plaintiffs fail to allege that Campbell breached any warranty because no reasonable consumer believes that the No Preservatives claim is a warranty the Soups do not contain citric acid, succinic acid, ascorbic acid and xanthan gum, ingredients that do not function as preservatives. *See supra* Part B.1; *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 674 (N.D. Ill. 2016) (breach of warranty claims fail with ICFA claims). As for the No Artificial Flavors claims, Plaintiffs do not allege those formed any part of the bargain between Campbell and Plaintiffs, as Plaintiffs neither saw nor relied upon those claims before purchase. *Lambert v. Dollar Gen. Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017) (warranty must form basis of the bargain).

## D.      Plaintiffs Lack Standing to Seek Injunctive Relief.

To the extent Plaintiffs seek an injunction, this request for relief should be dismissed for lack of Article III standing because Plaintiffs fail to allege they're likely to be harmed in the future.

To seek injunctive relief, a plaintiff must show a "real and immediate threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). So,

in a putative class action where the plaintiff alleges defendant's advertising is false or misleading and was deceived into purchasing a product she does not want, she has no threat of future injury because she is unlikely to buy the product again in the future. *Burton v. Hodgson Mill, Inc.*, 2017 WL 1282882, at *7 (S.D. Ill. Apr. 6, 2017). Here, Plaintiffs seek "all such other further relief, as may be just and proper," which may include injunctive relief. Complaint at 21. But Plaintiffs concede they are now aware that the Soups contain the challenged ingredients. Complaint ¶¶ 14–15. Moreover, Plaintiffs allege they do not want to purchase products with those ingredients. *Id.* Because Plaintiffs are aware of the alleged deception and have no intention of purchasing the Soups in the future, they lack standing to seek injunctive relief. *Burton*, 2017 WL 1282882 at *7.

## IV.    CONCLUSION

For the foregoing reasons, Campbell respectfully requests that this Court grant its Motion to Dismiss and dismiss the Complaint in its entirety with prejudice.

Respectfully submitted this 7th Day of August,

By:  */s/ Lauren Watts Staniar*
    One of the Attorneys for Campbell Soup
    Company

Kathleen A. Stetsko
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9400

Charles C. Sipos, *pro hac vice*
CSipos@perkinscoie.com
Lauren W. Staniar, *pro hac vice*
LStaniar@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: (206) 359-3316
Fax: (206) 359-4316

David T. Biderman, *pro hac vice* forthcoming
DBiderman@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Tel:  310.788.9900
Fax:  310.843.1284

## <u>CERTIFICATE OF SERVICE</u>

I, Lauren Watts Staniar, certify that on August 7, 2020, at my direction the foregoing

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was electronically filed with the

Clerk of the Court using the CM/ECF system, which effected service on the following attorneys:

David C. Nelson (ARDC 6225722)
Nelson & Nelson, Attorneys at Law, P.C.
420 North High Street
Belleville, Illinois 62220
Tel: 618-277-4000
Email: dnelson@nelsonlawpc.com

Matthew H. Armstrong (ARDC 6226591)
Armstrong Law Firm LLC
8816 Manchester Rd., No. 109
St. Louis, Missouri 63144
Tel: 314-258-0212
Email: matt@mattarmstronglaw.com

Stuart L. Cochran
Steckler Gresham Cochran, PLLC
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
972-387-4040
Fax: 972-387-4041
Email: stuart@stecklerlaw.com

Attorneys for the Putative Class

I certify under penalty of perjury that the
foregoing is true and correct.

*/s/  Lauren Watts Staniar*
Lauren Watts Staniar