IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HAUNAH VANLANINGHAM and
DANIELLE SCHWARTZ, individually
and on behalf of all similarly situated
current citizens of Illinois,

        Plaintiffs,

v.                                                    Case No. 3:20-CV-00647-NJR

CAMPBELL SOUP CO.,

        Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the court is a motion to dismiss (Doc. 19) by Defendant Campbell Soup Co. ("Campbell"). For the reasons set forth below, the Court denies the Motion.

### FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Haunah Vanlaningham and Danielle Schwartz ("Consumers") are citizens of Illinois who in 2018 purchased soup manufactured by Campbell which was labelled as containing "no preservatives added" and "made with patience, not preservatives" (Doc. 3-1 at 5). Consumers state that these labels on the soups that they purchased are generally characteristic of soups in Campbell's "Home Style Soup" and "Slow Kettle Soup" product lines.

Consumers filed this action on behalf of a class of Illinois consumers on March 6, 2020, in the Circuit Court for St. Clair County, Illinois, seeking monetary damages for deceptive advertising in violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act ("ICFA") and breach of express warranty under Illinois common law. Campbell removed the action to this Court on July 1, 2020. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the Consumers allege a class and (1) the aggregate number of members in the proposed class is 100 or more; (2) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs; and (3) the parties are minimally diverse, as Campbell is a New Jersey corporation.

Specifically, Consumers state that Campbell represented that their soups lack artificial flavorings and preservatives (the "Representations"), and these Representations enabled them to charge a premium from customers willing to pay extra to avoid those types of ingredients. Consumers allege that the Representations were false, however, because the soups in question contained ingredients including citric acid, ascorbic acid, succinic acid, monosodium glutamate, sodium phosphate, disodium guanylate, disodium inosinate, and xanthan gum (the "Challenged Ingredients") (Doc. 3-1 at 10). According to Consumers, these ingredients constitute artificial flavors and preservatives. Consumers purchased products from Campbell in reliance on the Representation, paying more than they would have for other similar products without the Representation (*Id.* at 11).

On August 7, 2020, Campbell filed the instant motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Campbell notes that relevant guidance from the FDA indicates that the actual function of an ingredient determines whether it is considered a preservative for labeling purposes, and the Challenged Ingredients are

capable of many functions in food (Doc. 20 at 7). Campbell notes that the complaints make no allegations as to the actual function of the Challenged Ingredients in the soups in question (*Id.*). Campbell further states that Consumers' claims relate to representations on Campbell's website and that the complaint fails to allege that Consumers actually saw the website representations before purchasing the soups (*Id.* at 8). Lastly, Campbell argues that Consumers' claims are preempted under federal law, as the Representations are identical to statements on other Campbell's soup products which the FDA has found to be not misleading (*Id.* at 7).

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

A motion to dismiss for lack of standing implicates Federal Rule of Civil Procedure 12(b)(1) and falls under a similar standard. *See Warth v. Seldin*, 422 U.S. 490, 503 (1975). The court must accept all material allegations of the complaint as true, and construe facts

in favor of the complaining party. *Id.*

## ANALYSIS

### I.  **Conflict Preemption**

Under the doctrine of conflict preemption, a claim under state law is barred where it would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of federal law." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013) (quotations omitted). Preemption doctrine should not be lightly applied, and the burden is on the party seeking preemption to present a showing of conflict "strong enough to overcome the presumption that state and local regulations can coexist with federal regulation." *Id.* "In addition to starting with a presumption against preemption, in order for a court to find conflict preemption it must either be impossible for a private party to comply with both the state and federal law or the state law must stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quotations omitted).

To assess whether a state law constitutes an "obstacle," the Court will consider the federal and state provisions in question in the context of the federal government's stated goals, the relative powers of state and federal government, and the history and function of the provisions in question. *See, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873-77 (2000) (noting stated intent of federal authorities in finding obstacle); *Maryland v. Louisiana*, 451 U.S. 725, 747-50 (1981) (considering historical development and function of federal provision in finding obstacle); *Hines v. Davidowitz*, 312 U.S. 52, 67-68 (1941)

(discussing relative powers of federal and state governments in the fields of international relations and immigration in finding obstacle).

Here, Campbell asserts that the state law claims in this case would conflict with the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.* ("FMIA"), and Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.* ("PPIA"). These acts form an integral part of the regulatory structure through which the federal government "administers inspection services, labeling requirements, marketing controls and other health and safety constraints on the meat processing industry." *Windy City Meat Co. v. United States Dep't of Agriculture*, 926 F.2d 672, 675 (7th Cir. 1991). In granting the USDA power to impose standards for labelling of meat products, these statutes require determination of whether labels of meat products are "false or misleading." *E.g.*, 21 U.S.C. § 457(d). The statutes contain provisions that expressly preempt state labelling requirements "in addition to, or different than" those imposed by the USDA for poultry and meat products. 21 U.S.C. §§ 467e, 678.

Based on these preemption provisions, courts in the past have struck down suits that attempt to bring state-law causes of action imposing labelling requirements on poultry and meat products. *See Meaunrit v. ConAgra Foods Inc.*, 2010 WL 2867393 at *6-7 (N.D. Cal. July 20, 2010) (collecting cases).

Here, it is not disputed that Campbell did go through USDA review and obtained approval for soups in its Slow Kettle and Home Style product lines that contained meat and poultry and that the USDA found that the Representations on those soups were not misleading. If the action in question involved soups that contained meat and poultry,

then, it seems evident that preemption would apply. The question for the Court is whether the preemption provisions of the FMIA and PPIA should apply to products that contain no meat or poultry. The Court takes the view that they do not.

Campbell argues that allowing Consumers to challenge the Representations on non-meat soups when the USDA has already determined it to be non-misleading on meat and poultry soups would frustrate "Congress's purpose of promoting consistency and transparency in food labeling" (Doc. 20 at 16). Congress's purpose in passing the FMIA and PPIA was not to create uniformity in all food labeling, however, but rather across meat and poultry products, and there is no indication that it was Congress's intent to push states out of the business of regulating food labelling in general. On the contrary, states have long had an interest in the protection of their own citizens from harmful commercial practices, and the regulation of fraudulent and abusive commercial speech has long been a subject of state regulation, not an issue that is inherently federal. Accordingly, the Court is inclined to construe the scope of preemption here narrowly. The Court further notes that there are good practical reasons not to generalize and extend the federal standard applicable to meat products to all other food products—an ingredient that does not function as a preservative or flavoring in one comestible may serve a different function in another, and a concentration of a particular ingredient that is deemed commonplace in a meat product might be unpalatable and unusual in a different type of comestible.

Overall, the burden is on Campbell to present evidence showing clear conflict between the federal and state provisions, yet Campbell has presented no persuasive

rationale for extending federal laws applying to meat and poultry to all other comestibles. The Court declines to apply preemption doctrine.

## II.   ICFA Claim

### A.   Reasonable Consumer Standard

Campbell further asserts that even absent preemption, Consumers' ICFA claims fail because they fail to allege that the Representation is misleading to a reasonable consumer.

To plead a claim under the ICFA, a plaintiff must allege "(1) a deceptive or unfair act or promise by the defendant;" (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). A plaintiff that is a private party must further show actual damage incurred as a result of defendant's conduct. *Id.* In determining what constitutes a deceptive practice, a Court should look to its potential effect on a "reasonable consumer." *E.g.*, *Davis v. G.N. Mortg. Corp*, 396 F.3d 869, 884 (7th Cir. 2005). The reasonable consumer test requires "a probability that a significant portion of the general consuming public…acting reasonably in the circumstances, could be misled." *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 921 (N.D. Ill. 2017). Allegedly deceptive labels must be viewed in context, and even where a statement might be deceptive in isolation, it may be permissible in conjunction with clarifying language. *Id.* at 922.

There is some disagreement as to whether the reasonable consumer test is properly considered as a basis for a motion to dismiss. Campbell cites *Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 939 (7th Cir. 2001), for the general proposition that a district court may dismiss an ICFA claim as a matter of law, and further cites a number of district court decisions in which ICFA claims have been dismissed for failing to plead sufficient facts to state a claim under the reasonable consumer test. *See, e.g., In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 922-24 (N.D. Ill. 2017) (finding that where statement in question was ambiguous and would be resolved by looking at ingredients, Court could dismiss as a matter of law); *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018) (differentiating case from one where "plaintiff would have to consult an ingredients list or fine print" and holding that because other available information would dispel deception, court could dismiss as a matter of law); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 758 (N.D. Ill. 2015) (in case involving refined sugar, court concluded that no reasonable consumer could believe proposed interpretation due to impossibility, dismissing); *Galanis v. Starbucks Corp.*, 2016 U.S. Dist. LEXIS 142380 at *6-9 (N.D. Ill.) (in dispute over volume of liquid in beverages, finding that no reasonable consumer would expect beverage size to refer to liquid volume without ice and additives rather than capacity of filled receptacle).

Consumers, on the other hand, argue that questions of what a reasonable consumer might believe are factual issues not appropriate for resolution on a motion to dismiss, citing a number of unpublished decisions. *See, e.g., York v. Andalou Naturals, Inc.*, No. 16-cv-00894, 2016 U.S. Dist. LEXIS 169923 (S.D. Ill. Dec. 8, 2016) (finding that

reasonable consumer's understanding for purposes of the Missouri Merchandising Practice Act is a factual question not suited for resolution on a motion to dismiss).

There likely are situations where determining a reasonable consumer's intent would require such a fact-intensive inquiry that it would be inappropriate to make such a determination on a motion to dismiss. The Court does not agree with the view, however, that the reasonable consumer test can never be grounds for dismissal. As the cases that Campbell advances illustrate, there are situations where the construction proposed by a plaintiff may be so illogical or impossible that a Court would be warranted in dismissing as a matter of law a claim under the ICFA.

The question remains, however, whether this is such a situation, and whether Consumers' proposed construction is so facially implausible that dismissal is warranted on the basis of the reasonable consumer standard. This is a high bar to reach on a motion to dismiss under Rule 12(b)(6). The Court notes that the ingredients list would have clarified that the soups in question did contain the ingredients that Consumers argue are preservatives. The question, then, is whether the language on the cans stating that the contents contained "no preservatives" is ambiguous such that it could be clarified by other available information. Here, the Court is of the view that there is an argument to be made that a reasonable consumer, upon seeing "no preservatives" might conceivably find that the language was an unambiguous representation that the contents did not contain the kinds of ingredients generally considered to be preservatives, without regard for whether those ingredients were in fact functioning as preservatives. This interpretation may not, in fact, be the best reading of the language in question. But this

line of argument is not so wholly implausible that the Court is prepared to grant a motion to dismiss on this basis.

### B.     Claims regarding "Artificial Flavor" language

In addition to arguing that the complaint fails to sufficiently allege that the language regarding preservatives is misleading to a reasonable consumer, Campbell further alleges that claims made by Consumers about artificial flavors fall short because they fail to allege that they saw the language in question before purchasing Campbell's products. Indeed, the complaint does not allege that Consumers ever saw the language regarding artificial flavors, and they cannot show proximate cause as required under the ICFA based on the website statements.

As the Court has discussed, the ICFA requires plaintiffs that are private parties to show actual damages incurred as a result of a defendant's alleged violation, and this requires a showing of proximate cause. 815 Ill. Comp. Stat. 505/10a; *Camasta*, 761 F.3d at 739. Here, the complaint makes no allegations that indicate Plaintiffs saw the website representations prior to purchase, or that the representations regarding artificial flavorings in any other way proximately caused the alleged injuries. Accordingly, the Consumers cannot sustain their suit based on these allegations. As all of the counts in their complaint are also based on the representations connected with preservatives which were viewed by Consumers prior to purchase, the Court does not see that this failing constitutes grounds to dismiss any portion of the complaint. Should Consumers wish to present arguments going forward on the website statements regarding flavorings, they

may seek to amend their complaint if they can plead facts indicating that they actually saw those statements.

### III.  Unjust Enrichment and Breach of Warranty Claims

Campbell argues that because Consumers' ICFA claim fails, their claims for unjust enrichment and breach of warranty should fail also. Here, the Court has declined to dismiss the ICFA claim, and so it will likewise not dismiss the unjust enrichment and breach of warranty claims.

### IV.  Standing for Injunctive Relief

Campbell argues that Plaintiffs lack standing to seek an injunction. While the Court notes that the language in the complaint seeking "all such further relief, as may be just and proper" could theoretically be construed as including an injunction, this is in fact standard boilerplate language and Consumers do not appear to be seeking equitable relief at present. Accordingly, the Court is not inclined to consider this issue at present.

CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion to Dismiss.

**IT IS SO ORDERED.**

DATED:   October 5, 2020

_____

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**